May it please the Court, Counsel. Should the government have the capacity to prosecute you for doing exactly as they would expect you to, simply put, the facts of this case are not germane to the accusation. The government takes the position that any attempted reentry by a deported alien is a felony. Any attempted reentry at all. But that's not what the indictment requires. The indictment in this case requires without consent. And so we must speak to the specific intent question, as the indictment indicated. This was an attempted illegal reentry. And as we know, attempt requires specific intent. But the specific intent here must be to attempt to enter without consent. To think that a person who A, approaches a designated person. Kagan I'm not sure I understand. You're not are you contending that he never attempted to reenter or that he had no intent to reenter or that he had no intent to reenter illegally? The latter. The question is, did he attempt to illegally reenter? As the case law is plain, Zavala, I'm sorry, the elements of reentry, says Gracidas-Urbai, require an attempt without consent. And if you attempt to reenter with consent, then you can't be found guilty of this crime. It is a logical impossibility. What was the consent? Well, Your Honor, I go to the description given in Zavala-Mendez. Aliens who proceed directly as instructed by signs. By what? By signs. And I am quoting at 411 F3rd 116 at 1, I'm sorry, 1116 at 1120. Aliens who proceed directly as instructed by signs or otherwise to the customs facility, be it through an airport corridor, government designated highway, or some other designated legitimate path, are not sneaking into the United States. Well, remember to say he was sneaking. This isn't a case of sneaking. This is a case of hoping when he presented a card that he would not, they would not notice that it had expired. I will continue very briefly, Your Honor. Instead, they are presenting themselves to an American official in the manner designated by the United States government. An alien who crosses the border on a government designated path on a highway should be treated like the airport aliens, not like the fence-jumping aliens. When an individual who presents his own identification that was, by the way, issued by the government of the United States of America and given back to him. Was it valid? It was valid, but expired. So it's no longer valid. Your Honor, the officer Terrell testified, and actually it wasn't officer Terrell. The officer that actually deported him testified that they, that he was returned, Mr. Valgarra-Chavez was returned after a safety and security check of all of his belongings. He was returned everything that was given to him. So we don't even have a fake ID here. What we have here is an individual with his own information. Yeah, but nobody's contending that there's fraud. Well, then why are we here? You're, you're, you're, are you contending that the government consented to his reentry? No, Your Honor. What I am contending is this, that when you do exactly what the government asks you to do, and you approach a designated port of entry to reapply for admission, in the words of Officer Perez, everyone who approaches is applying for admission, then you are putting yourself into the hands of the government agent that can say, no, you can't come in. But you're doing it the way the government prescribes. And that should not, it is logically impossible that that would be a crime. The government has ports of entry and has controls to keep people from coming in, not to prosecute crimes. The purpose of the ports of entry is to, for this particular individual, this card is no longer valid, sir. Do you want to reapply legally? Do you want to check this out or something? Instead, what they do is they take him and prosecute him as a felon. For what? The facts can't be the same. He had been deported, correct? Correct? He had previously? Previously been deported. As many thousands of people who end up getting out. I understand this. The question is very simple. Was he previously deported? Yes, Your Honor. The answer is yes, isn't it? That is correct. And at that time, wasn't he warned that if he attempted to reenter, it would be a felony? Your Honor, the warning is Can I have a yes or no to that question? The specific answer is no, because the crime is attempting to illegally reenter. That's the distinction here. And my question was, when he was deported, was he or was he not warned that if he attempted to reenter, it would be a felony? No. The answer has to be no, because anyone can attempt to enter, and anyone can attempt to illegally or can attempt to legally reenter this country. Only after first obtaining permission from the Attorney General is what the warning given to him, as I understand it, was. That's absolutely correct, Your Honor. And where is he to get that consent? Well, it says you can't start your trip until you have that consent. Well, Your Honor, and where is he supposed to get that consent? From the border crossing agents at the border. Well, the testimony in this case was very clear. The individuals who come to this country and come towards this country are applying for admission, so says the agent. The second agent, by the way, the one that pushed prosecution, the first agent pushed immediate expulsion. Agent Roman had processed all of the paperwork for an expedited removal. She was the one that was exercising common sense. She said, you're not supposed to come in, get out. And that's very clear here. Agent Perez then stepped in, and after not being completely candid in the preliminary hearing, he then, which is very clear from the cross-examination, he comes in three hours later and decides that this has to be a criminal prosecution. Well, your argument would be completely different, it seems to me, if your client had come to the approach, the checkpoint, and said, I think that my card is invalid, it's expired, and I'm looking at how can I apply to get into the United States, or if he had indicated that he was trying to get papers to get into the United States, but he just handed him the card. Your Honor, we don't know what the specific words were that were exchanged, but I'd like to reserve. Well, without taking any of your time, giving you the full two minutes plus, is this correct in the transcript? Did you know you were what you were doing, attempting to enter the United States after did you know what you were doing, attempting to enter the United States being after being removed by presenting a no longer valid I-551 resident alien card is illegal? And he answered yes. Is that correct? That's what the transcript says, Your Honor. Okay. Thank you. We'll give you your time on rebuttal. Thank you. May it please the Court. I am Randall Howard, representative of the United States in this matter. In answer to Joe Tocan's question, in the supplemental excerpt of Rector from 24 to 26 and 27, the defendant was advised that reentering the United States would be illegal. It was a felony institution to 20 years' imprisonment. What we have here is, as Judge Schroeder alluded to, we do not have the situation here where someone is approaching the checkpoint seeking information on how to reenter. He is attempting to reenter illegally. As I explained in my brief, the circumstances show that because he's nervous and frugally, and he hands over his invalid card. The most telling evidence here is his statements, which are in page 36 of the supplemental excerpt of Rector. And I asked Judge Randall Howard, the question, do you know that you were deported from the United States? Yes. And what did the officer tell you? He told me not to tell me until I fixed the problem. He admitted that reentering, the attempt to reenter the United States was illegal. The question before the jury, the question before this court is, was this evidence from which a reasonable jury could conclude beyond reasonable doubt that the defendant had the specific intent and intended to reenter. There's no question here. Unless this Court has any questions. Thank you very much. Thank you. You know, the transcript seems very difficult to overcome, that he knew he wasn't supposed to just go to the guard, that he was supposed to come first. He knew he wasn't supposed to reenter without getting it turned, changed before he could, and that he knew he was reentering illegally. How do you overcome that? Your Honor, the law should overcome that by indicating the following. To have the specific intent to reenter without consent, one must act as if he doesn't want that consent. To present yourself to an inspector at the border is not to ask to come in without consent. I'm asking the Court to stick to what the indictment says. If this was to be an illegal reentry Did he ask for consent when he got to the border? The point here is, Your Honor, I don't know what he said when he walked up to the border inspector. But the point here is this. If you are going to, and, Your Honor, you'll forgive me for using this analogy. If my 2-year-old daughter is told, don't take a cookie without permission, and she asks for permission to take the cookie, can she then be punished for having attempted to take the cookie? Because she just takes the cookie to see if she can get away with it. She didn't ask for permission. But in this case, he walked up to the place where you'd ask for permission. Did he ask for permission? Your Honor, he did everything that the law requires. Well, did he ask for permission? Your Honor, by Agent Perez's own admission, everyone approaching the border is applying for admission. Not only that, but Officer Terrell's testimony indicated that the reason they're there is to determine eligibility. It's the analysis of the officers that will allow whether you come in or not. It's to put the burden on everybody else and create the fortress. If we want to prosecute you, we're going to prosecute you, whether or not. I think we understand your argument. Thank you very much. Thank you, counsel. The case just argued is submitted for decision.
judges: Schroeder, Reinhardt, Hawkins